SUSAN DAY POROTTO, executrix, *vs.* FIDUCIARY TRUST
COMPANY, trustee, & others.

Essex. May 6, 1947. — September 19, 1947.

Present: QUA, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Rule against Perpetuities. Power. Devise and Legacy,* Rule against per-
petuities, Power, Individual or joint gift, Vested or contingent gift.
*Joint Tenants. Probate Court,* Citation, Accounts. *Notice. Trust,*
Trustee's accounts. *Laches. Limitations, Statute of. Executor and
Administrator,* Short statute of limitations.

Under the will of a testatrix, who had had an interest in the income of
an inter vivos trust created before she had any children and a general
testamentary power of appointment over the principal, appointing the
principal to a testamentary trustee to pay the income to the living
children of the testatrix and to the issue of deceased children until
the death of the last surviving child, a further provision, in effect
giving each child or issue of a deceased child a right to augmentation
of income upon the death of another child without issue or upon a
failure of his issue, created contingent interests which were void under
the rule against perpetuities because, even in the light of the facts
existent at the death of the testatrix, they might not become vested
within any life in being at the time of the creation of the inter vivos
trust and twenty-one years after such life.

Under provisions of a will, establishing a trust to pay the income to the
testatrix's living children and the issue of deceased children until the
death of the last surviving child, and, upon the death of a child with-
out issue or upon a failure of his issue, to pay his share of the income
to the other children or issue of deceased children, the children did
not take vested estates in the income as joint tenants.

Neither the fact that the items in a trustee's accounts allowed before the
effective date of St. 1938, c. 154, § 1, had been "finally determined
and adjudicated," nor the provision of that statute, as applied to
later accounts allowed after its effective date, that they should "not
be impeached except for fraud or manifest error," precluded one, who
was interested in all the accounts and who proved that he had not
in fact had notice of their presentation for allowance pursuant to the
order of the Probate Court, notwithstanding a recital of proper service
in the return of service upon the citation, from seeking revocation of
the decrees allowing the accounts in order to correct substantial errors
therein.

The prima facie effect of a return of service of a citation issuing from a
Probate Court and requiring notice by publication and mailing of a
petition for allowance of an account was overcome, and was of no

effect to bar a petition by a party interested to revoke a decree allowing the account, where he proved that he in fact had had no notice as ordered.

Upon revocation of decrees allowing certain probate accounts, a previous account, allowed before the effective date of St. 1938, c. 154, § 1, without its items being "finally determined and adjudicated," would also be reopened for the correction of errors.

Probate accounts, whose items were "finally determined and adjudicated" before the effective date of St. 1938, c. 154, § 1, upon proper notice to interested parties, could not be reopened for the correction of substantial errors which were of such a character that they could be ascertained only by an elaborate reëxamination of fact and law, but which related to matters fully open and susceptible of being tried at the original hearing on the accounts.

Laches did not bar a petitioner from seeking reopening of a trustee's accounts for correction of an erroneous distribution of income which ought to have gone to the petitioner, where, although he had delayed many years before taking action, there was no evidence that he knew during that period facts upon which his rights depended or that any of the opposing parties were prejudiced by the delay.

A beneficiary of a trust seeking to reopen accounts of the trustee in order to correct an erroneous payment of income made to another beneficiary, who had since died, instead of to the petitioner, and by the correction to reduce an amount presently payable from the trust to the estate of the deceased beneficiary, was not a creditor of that estate nor barred by the short statute of limitations applicable thereto.

PETITION to revoke decrees, filed in the Probate Court for the county of Essex on April 10, 1946.

The case was heard by *Phelan*, J.

*W. B. Trafford*, (*C. M. Storey* with him,) for the petitioner.

*S. H. Babcock*, (*A. P. Lowell* & *G. M. Taylor, Jr.*, with him,) for the executor of the will of Mary Martha Taylor.

*R. H. Wiswall*, (*C. Y. Wadsworth* with him,) for Fiduciary Trust Company, trustee.

*H. P. Goldstein*, for Aimee Henry Mishou.

*D. Schwartz*, *A. B. DuBois* & *I. Jaffee*, for the Attorney General of the United States, submitted a brief.

*T. A. Henry*, for De Sartiges and another, submitted a brief.

QUA, C.J.   This is a companion case with *Fiduciary Trust Co.* v. *Mishou*, also decided this day. Most of the pertinent facts appear in that case and will not be restated here. That case was a petition by the trustee under the will of Martha S. Parker for instructions primarily as to the distribution

of the principal of the trust. This case relates primarily to past distributions of income of the trust and particularly to past distributions of income under the provision of Mrs. Parker's will whereby upon the decease of a child without issue (or the failure of issue of a child) the portion of income previously paid to him or her should go to augment the income payable to any child who survived and to the issue of any deceased child.

After the death without issue of Charles T. Parker in 1912, he being the first to die of Mrs. Parker's three children, the trustees, apparently proceeding upon the theory that all the limitations of Mrs. Parker's will were valid, divided that portion of the income which Charles had been receiving equally between the two surviving children, James and Mary, and after James died in 1930, the entire income was paid to Mary. Seventeen trustee's accounts were allowed showing these payments. The petitioner in this case is the executrix of the will of Charles. It is her contention that the provisions of Mrs. Parker's will by which, upon the death of a child without issue (or upon failure of issue), income which that child had been receiving would be shifted to another child or to the issue of a deceased child were invalid as to income derived from property traceable from the trust under the marriage settlement of 1851 because in violation of the rule against perpetuities; that the income involved in these augmenting limitations, in so far as derived from such property, should have gone to the three children and their estates under the will of their father, Richard T. Parker, in the proportions of three twentieths to the estate of Charles, eleven twentieths to James and after his decease to his estate, and six twentieths to Mary, the last child to die. The present petition has for its object the revocation of the decrees allowing the trustee's accounts in order that the necessary corrections may be made, and that the trustee may be ordered to pay out of the fund in its hands a sum which, it is contended, these corrections will show has been paid to Mary at the expense of the estate of Charles. The judge entered a decree dismissing the petition.

In our opinion the position of the petitioner is to a great

extent correct.   We think that the limitations in Mrs.
Parker's will above mentioned, providing for augmenta-
tion of income, were contingent interests which were not
vested at Mrs. Parker's death and which might not vest
until more than twenty-one years after any life or lives in
being in 1851, when Mrs. Parker's power of appointment
was created.   These interests were contingent not only
upon the person or persons who might take them being
"living" persons at the times when they might take but
also upon the death of a child without issue or the failure
of issue of a child.   Who the takers would be could not be
ascertained until the events occurred.   *Dunn* v. *Sargent,*
101 Mass. 336.   *Shaw* v. *Eckley,* 169 Mass. 119.   *Gardiner*
v. *Savage,* 182 Mass. 521, 524.   *Alexander* v. *McPeck,* 189
Mass. 34, 39–43.   *Clarke* v. *Fay,* 205 Mass. 228.   *Gardiner*
v. *Everett,* 240 Mass. 536, 539.   *Springfield Safe Deposit &*
*Trust Co.* v. *Ireland,* 268 Mass. 62, 66.   *Whiteside* v. *Mer-*
*chants National Bank,* 284 Mass. 165, 174.   We cannot
accept the opposing contention that Mrs. Parker's children
took vested estates in the income as joint tenants.   In a
joint tenancy the survivor takes the whole, but Mrs. Park-
er's will provided that in some circumstances issue and not
the surviving children should take.   Neither can we accept
the contention that the children had at Mrs. Parker's death
vested interests in the augmentation of income the enjoy-
ment of which was merely postponable in case issue should
intervene.   This construction seems to us strained and in-
consistent with the words used.   We think that the shifting
gifts of income upon the death of a child (or failure of his
issue) were limitations over; that the income so limited
might go to other children of Mrs. Parker or might go to
the issue of the deceased child or might go to issue of a
child who had previously deceased; and that the future
interests in the income were contingent.   *In re Legh's Set-*
*tlement Trusts,* [1938] 1 Ch. 39.   *Whitby* v. *Von Luedecke,*
[1906] 1 Ch. 783.

It follows that the limitations over of income upon the
deaths of Mrs. Parker's children (or the failure of their
issue) were invalid as to that proportion of such income as

was derived from property which came from the 1851 trust, and that to the extent of the invalid limitations that income devolved by resulting trust and through the will of Richard T. Parker upon the three children in the same manner in which we have held in the companion case of *Fiduciary Trust Co.* v. *Mishou* that principal subject to invalid disposition devolved upon the three children.

But it is argued that the decrees allowing the trustee's accounts cannot now be revoked because the items of all the accounts (except one) that were allowed while G. L. (Ter. Ed.) c. 206, § 24, was in force before it was changed by St. 1938, c. 154, § 1, were "finally determined and adjudicated," and the accounts that were allowed after the change in the statute, according to the terms of the statute as changed, "shall not be impeached except for fraud or manifest error." See *New England Trust Co.* v. *Paine,* 317 Mass. 542, 544–545. But § 24 contained a provision that such notice as the court might order that an account was to be adjudicated must be given "to all parties," as the statute read before the change, or "to all persons interested," as it read after the change. Citations issued on accounts one to five, inclusive, required notice by delivery or by publication and mailing "to all known persons interested." The citations on accounts six to seventeen, inclusive, required notice by delivery or by publication and mailing "to all persons interested." The returns upon all the citations recited that notice was given by publication and mailing. In fact no notices on accounts six to seventeen, inclusive, were mailed to the petitioner. She was a person interested. Notice should have been mailed to her. A positive requirement of G. L. (Ter. Ed.) c. 206, § 24, both before and after it was changed by the act of 1938, was not observed as to accounts six to seventeen, inclusive. It follows that as to the petitioner these accounts were not "finally determined and adjudicated" and the provision of the statute as changed that after allowance accounts should "not be impeached except for fraud or manifest error" did not apply to them.

No doubt the returns upon the citations were prima facie

evidence that proper service had been made and could be accepted as such by the Probate Court in the first instance. But when it now appears upon a petition for revocation that the statutory basis for a final adjudication as to this petitioner had never in fact been laid, as to accounts six to seventeen, inclusive, we think that the decrees allowing these accounts should be revoked and the petitioner be given her day in court. *Baker* v. *Blood,* 128 Mass. 543. *Clarke* v. *Andover,* 207 Mass. 91, 97–98. *Neafsey* v. *Chincholo,* 225 Mass. 12, 17. *Gallagher* v. *Sullivan,* 251 Mass. 552. *Zalis* v. *Ksypka,* 315 Mass. 479, 482. See *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 215; *Goss* v. *Donnell,* 263 Mass. 521; *McNulty* v. *Howe,* 290 Mass. 597, 599–600; *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 154; *Wilbur* v. *Hallett,* 305 Mass. 554, 557; *Kennedy* v. *Simmons,* 308 Mass. 431, 432–433; *Mitchell* v. *Mitchell,* 312 Mass. 154, 162; and *Waitt* v. *Harvey,* 312 Mass. 384, 390. Compare as to notice on a petition for probate of a will, *Bonnemort* v. *Gill,* 167 Mass. 338; *Donnell* v. *Goss,* 269 Mass. 214, 217.

Account five was allowed without being "finally determined and adjudicated" under § 24 as that section then stood, and since the decrees on the subsequent accounts are to be revoked, account five will be reopened for the correction of errors at the new hearing upon the subsequent accounts. *New England Trust Co.* v. *Paine,* 317 Mass. 542, 544–547.

Accounts one to four, inclusive, stand differently. We fail to discover any substantial evidence sufficient to overcome the evidence furnished by the return of service and to prove that notice was not mailed to the petitioner on these accounts. And they were "finally determined and adjudicated" under the former § 24. The errors which it now seems existed in these accounts are such that they can be ascertained only by a most elaborate reëxamination of both fact and law. This sufficiently appears both from this opinion and from the opinion in the companion case of *Fiduciary Trust Co.* v. *Mishou.* They are not the type of error referred to as "manifest error" in the present § 24.

Neither are they the type of error commonly reached in other forms of proceeding by bill or writ of review, to which revocation of decrees in probate bears some analogy. They relate to matters all of which were fully open and could have been tried out at the original hearings on the accounts. Nothing new has been discovered since which was not discoverable then. The final determination and adjudication of accounts under the former § 24 would mean nothing and give no protection if the decrees could be revoked for errors of this type. *Gale* v. *Nickerson*, 144 Mass. 415. *Holyoke National Bank* v. *Dulitzky*, 273 Mass. 125. *Kennedy* v. *Simmons*, 308 Mass. 431, and cases cited. Compare *Theberge* v. *Howe*, 314 Mass. 22.

It is argued by certain respondents that the petitioner is barred by laches. We think she is not. It is true that she delayed many years before taking action. But there is no satisfactory evidence that during this time she had any knowledge of the indenture of 1851 upon which her rights depended. Neither is there substantial proof that any of the parties was prejudiced in securing evidence or otherwise. The petitioner disclaims any right to charge the trustee out of its own property. She seeks no remedy against anyone other than that a part of the trust fund remaining in the trustee's hands be diverted to her to the extent of overpayments previously made to Mrs. Taylor that should have been made to the estate of the petitioner's husband. There were undoubtedly difficulties in securing evidence, but whether these would have been less if the petitioner had proceeded more promptly remains a matter of conjecture. It is settled that mere delay does not constitute laches. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288. *Norton* v. *Chioda*, 317 Mass. 446, 452. *Goldstein* v. *Beal*, 317 Mass. 750, 759.

There is no merit in the further contention that this petition to revoke decrees allowing trustee's accounts of the trust under Mrs. Parker's will is barred by the special statute of limitations applicable to the estate of Mary Martha Taylor. The petitioner is not suing as a "creditor" of Mrs. Taylor. G. L. (Ter. Ed.) c. 197, § 9, as amended by

St. 1933, c. 221, § 4. She is making no claim against Mrs. Taylor's estate. The petitioner is merely seeking to revoke certain decrees that stand in the way of an equitable distribution of a trust fund in the hands of a trustee. Her claim is against the trustee just as is the claim of Mrs. Taylor's estate. The trustee has brought a petition for instructions in the companion case of *Fiduciary Trust Co.* v. *Mishou.* It has a right to be instructed, whatever may be the effect of the instructions upon the distributive share of any person interested. It is immaterial that if the petitioner's right to a distributive share is established the distributive share of Mrs. Taylor's estate will be diminished. This fact does not make the petitioner a creditor of Mrs. Taylor's estate. *Bowker* v. *Torrey,* 215 Mass. 547, 549. *Stoneham Five Cents Savings Bank* v. *Johnson,* 295 Mass. 390, 395. *New England Trust Co.* v. *Spaulding,* 310 Mass. 424, 429-430.

We have considered all the contentions of the parties and have discussed such of them as seemed to call for discussion.

The result is that the decree dismissing the petition is reversed, and a decree is to be entered revoking the decrees allowing the sixth to the seventeenth accounts, inclusive, not for the purpose of imposing any liability upon the accounting trustees or any other persons payable out of their own assets, but solely for the purpose of showing any portion of the fund now in the hands of the trustee applicable under the decisions in this case and in the companion case of *Fiduciary Trust Co.* v. *Mishou* to reimburse the estate of Charles T. Parker, as between that estate and the estate of Mary Martha Taylor, for overpayments, if any, of income to Mary Martha Taylor made during the periods covered by accounts six to seventeen, inclusive. See *Harris* v. *Starkey,* 176 Mass. 445; *Cleaveland* v. *Draper,* 194 Mass. 118; *Jones* v. *Jones,* 223 Mass. 540, 544. A decree in this form will fully serve the petitioner's purposes as declared and limited in her petition. The Probate Court is to hear the issues raised on those accounts at the time of the hearing on the decree after rescript in *Fiduciary Trust Co.* v. *Mishou,* in order that pending issues in these matters may be deter-

mined at the same time and consistently. At the hearing, the fifth account, which has been "allowed" but not "adjudicated," may be reopened, if necessary, for the same purposes for which the decrees on the later accounts are to be revoked. An eighteenth account not yet allowed must of course be dealt with in the light of the principles set forth in this decision and in the decision in *Fiduciary Trust Co.* v. *Mishou.* In view of the close connection between this case and the petition for instructions dealt with in *Fiduciary Trust Co.* v. *Mishou* costs and expenses of appeal in this case also shall be in the discretion of the Probate Court.

*So ordered.*