ARTHUR P. GAY, receiver, vs. CARL CARLSTEIN.

Suffolk. October 21, 1927.— March 2, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Absentee. Husband and Wife. Probate Court,* Absentee proceedings. *Receiver,* In absentee proceedings.

In 1902 an agreement in writing was made between a man, a trustee, and the man's wife providing for periodical payments by the man for the wife's benefit. In November, 1916, the Probate Court, in absentee proceedings in which the trustee had been appointed receiver of the estate of the husband, directed payment by the receiver to himself as trustee under the agreement of $1,200 of a fund of $1,500 which he had received from a city as a pension due the absentee, and also directed him to pay himself as trustee "from time to time hereafter such sums as may be available for that purpose, having regard to the orders of the court in this case at any time made, until the whole of arrears now accrued and hereafter accruing under said agreement shall have been paid and thereafter the sum of twenty-five dollars each month as of the eighth day thereof as provided in said agreement until the further order of the court." In May, 1925, a further decree of the court was made directing the receiver to collect certain sums, to make specified payments therefrom, and "to hold the remainder of the amounts so collected in his hands pending the final disposition of the . . . [proceeding] or until the final order of the Court." No payments were made to the receiver from the date of the decree of November, 1916, until May, 1925. From a payment then made, the receiver made a substantial payment to himself as trustee for the wife, not specified in the decree of May, 1925. Upon a hearing on his account, the item showing such payment was disallowed. *Held,* that
   (1) The payment could not be justified under the decree of November, 1916, that decree having been superseded by the decree of May, 1925;
   (2) The payment could not be justified as a payment by the receiver of a debt of the absentee, since the receiver was not authorized by statute to pay debts except by special order of the court;
   (3) Because of lack of evidence as to relations of the husband and wife since 1916, which would require a ruling as a matter of law that the money which the receiver had paid himself as trustee was a debt owed by the absentee under the agreement, the trustee had no right of appeal from the decree disallowing the item: no relation of creditor was established on the record.

PETITION, filed in the Probate Court for the county of Suffolk on March 28, 1927, for the allowance of the second

and final account of Arthur P. Gay, receiver of the estate of Carl Carlstein, an absentee.

Item 15 of schedule B of the account read: "Mar. 1, 1927. Paid Arthur P. Gay, Tr. for Ingeborg Carlstein, $3,600." The petition was heard by *Dolan,* J. Material facts found by him are stated in the opinion. By his order a final decree was entered reducing Item 15 to $350 and allowing the account as amended accordingly. Arthur. P. Gay appealed, both in his capacity of receiver and as trustee under the agreement for Ingeborg Carlstein.

The case was submitted on briefs.

*A. P. Gay & E. B. Church,* for the petitioner.

*J. Burke,* for the respondent.

WAIT, J. This is an appeal from the disallowance of an item in the account of a receiver for an absentee. G. L. c. 200. He received the greater part of the fund for which he was accounting under a decree made May 28, 1925, which directed him to collect certain sums, to make specified payments therefrom, and "to hold the remainder of the amounts so collected in his hands pending the final disposition . . . of the [proceeding] or until the final order of the Court." He made payment of the amount of the disputed item out of the remainder on March 1, 1927, and without further order of the court specifically directing it. He contends that he was justified because of a decree made November 29, 1916, upon an earlier petition in the same general matter; and that he is entitled to the allowance of the item because in making the payment he was satisfying a debt due from the absentee.

The decree of November 29, 1916, dealt with a fund of about $1,500 which the receiver then held and which the decree contemplated would be added to from time to time by amounts to be collected by him from the city of Boston as pension payments due the absentee. It directed payment forthwith of $1,200 to the receiver in his capacity as trustee under a certain agreement, "and from time to time hereafter such sums as may be available for that purpose, having regard to the orders of the court in this case at any time made, until the whole of arrears now accrued and hereafter accruing under said agreement shall have been paid and thereafter

the sum of twenty-five dollars each month as of the eighth day thereof as provided in said agreement until the further order of the court." The agreement referred to was made in 1902 between the absentee, his wife, and a trustee under the agreement who has since become this receiver. No money was in fact received from the city of Boston between November 29, 1916, and May 28, 1925; and no order for payment was made by the court before May 28, 1925. Manifestly the decree of November, 1916, was superseded by that of May, 1925. The accountant cannot justify under the earlier decree.

The decree of May, 1925, gave no specific direction for payment by the receiver to the trustee under the agreement. Whether or not there were arrears due under the agreement, the explicit instructions to the receiver were that after he had made the several payments which the decree ordered, he should hold the remainder pending final disposition of the matter or further order of the court. This he did not do, unless there is force in his second contention. The absentee, Carlstein, after being away since 1912, returned to Massachusetts in 1925, and petitioned that the receiver be discharged. The city of Boston then held $5,100 accrued pension due Carlstein, which it had refused to pay to the receiver because he had been unable to prove Carlstein alive and entitled to it. If payments under the agreement were due, the arrears were about $3,000. The receiver was ordered to obtain the $5,100; to pay Carlstein $2,000 forthwith, and $25 a month; and to hold the remainder as already stated. The matter then stood to await Carlstein's return from a visit to Sweden. He came back in 1927, and filed a new petition for discharge of the receiver. On this a decree was made March 18, 1927, terminating the receivership and ordering the receiver to account.

It is argued that the earlier proceedings had affirmed the validity of the agreement; that the payments which it provided for were debts of Carlstein within the meaning of the absentee statute, *Purdon* v. *Blinn*, 192 Mass. 387; that the accruals then amounted to $3,550; and that the order to account justified the receiver in paying such debts of Carl-

stein as were due and merely accounting for the balance left in his hands. This argument disregards the difference between property of an absentee owner held by a receiver under our statute and property of a deceased owner held by an administrator. The latter is bound to pay the debts of his intestate; the former can pay only such debts as the court authorizes and directs.

The only provision for discharge of the obligations of an absentee made by our statute is § 10, which empowers the court to order application of the property held to "charges incurred or that may be incurred in the support and maintenance of the absentee's wife and minor children," and "of such debts and claims for alimony as may be proved against the absentee."

The object of the statute is the preservation of the property of the absentee, not its distribution. The receiver is to gather in and hold. The provision of § 11 authorizing the court to empower the receiver to adjust by arbitration or compromise claims by or against the estate is designed to facilitate getting in the property. Creditors must proceed as against any absent or nonresident, but living, defendant; or, possibly, by petition in the Probate Court. The receiver is not an administrator. See *DeNormandie* v. *Zwinge*, 255 Mass. 214, 218. He has no inherent power to pay out. It is only when ordered to diminish the property, that he has power to part with any of it. None of the few cases which have dealt with the matter has considered the question here presented. It is clear that until the period of distribution dealt with in §§ 13, 14, the defendant is treated as though alive and not as deceased. The Probate Court has only such power as is expressly granted, and within its jurisdiction the receiver can act only on its order. As receiver the accountant cannot sustain his appeal.

Nor can he successfully uphold an appeal, as trustee under the agreement. If we assume that Carlstein has waived the valid defence that no proper action at law or petition for allowance of a provable claim has been begun against him, because he has gone forward without raising this objection: the record fails to show that he, in fact, owed the amount in

arrears under the agreement. Much may have happened between 1916 and 1925 to affect the respective rights of Carlstein, his wife, and the trustee under the agreement. The record is bare of evidence which requires us as matter of law to hold that the sum paid was rightfully due. The court allowed payment of $350 arrears due in November, 1916, which it treated as made from the balance held by the receiver under the decree of 1916 and in his hands when the decree of 1925 was made. We see no reason to disturb the decree in this regard. So much had been authorized in 1916.

Had there been no violation of the interlocutory decree in the payment made, this record fails to show that there was error in refusing to allow the payment.

*Decree affirmed.*